UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Debra M. Douglas, on behalf of herself   \*
And others similarly situated,   \*
      Plaintiffs,   \*
  \*
v.   \*     Case No. 1:18-CV-01064 JL
  \*
Allegiant Air, LLC,   \*
      Defendant.   \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT

NOW COMES the plaintiff, Debra M. Douglas, individually, and on behalf of herself and all others similarly situated, and respectfully submits the within First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a), and in support thereof, states as follows:

1.     Federal Rule of Civil Procedure 15(a) provides "the court should freely give leave when justice so requires."

2.     The Court on July 22 has permitted Plaintiff to amend her Complaint to add a count for invasion of privacy by intrusion upon seclusion, and to clarify the other counts.

## PARTIES

3.     Plaintiff, Debra Douglas, is an individual citizen of the State of New Hampshire and resides at 40 Stone Sled Lane in Bow, Merrimack County, New Hampshire.

4.      Defendant Allegiant is a foreign limited liability company which was formed in Nevada and with a principal place of business located at 1201 North Town Center Drive, Las Vegas, NV 89144.  It is authorized to do business in New Hampshire with a registered agent of Corporation Service Company, 10 Ferry Street, Suite 313, Concord, NH 03301.

## JURISDICTION AND VENUE

5.      The matter in controversy exceeds $5,000,000 and the class is comprised of hundreds of individuals.   Plaintiff has citizenship diverse from the defendant. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) and 1441(a), in that Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  Defendant's use of Portsmouth (Pease Tradeport/Airport) for its airline business within this federal District is sufficient to subject it to personal jurisdiction.

## FACTS

7.      This case arises from Defendant's tortious and negligent conduct which intruded upon Plaintiff's privacy and violated reasonable expectations of her contractual relations with Allegiant Air.  On November 8, 2018, Defendant sent an email to 400 recipients with a subject line reading "Allegiant's NEW Emotional Support and Service Animal Policies."  This email publicly exposed 400 email addresses belonging to individuals who submitted paperwork to fly in the cabin accompanied by emotional support or service animals.  All those in Allegiant's database of 400 were individuals

with approved medical or psychological reasons to have a comfort or service animal. Most of the exposed email addresses identified the full name of those individuals. One such example is the email address that belongs to Plaintiff Debra Douglas and identified her by name: debradouglas1@gmail.com.

8.     Not even an hour after sending the first email privacy breach, Defendant sent a second email stating that it "would like to recall" the first email. Defendant's feeble attempt to recall its first email could not reverse the harm already caused by publicly disclosing private facts and intruding. Even if Defendant's second email could have miraculously reversed that harm, Defendant publicly disclosed private facts again – for the second time – when its clumsy recall email again publicly exposed the same 400 email addresses belonging to individuals who had traveled with support or service animals on Defendant's flights.

9.     By negligently and publicly disclosing what Allegiant agrees is protected "personal information," namely the email addresses of 400 individuals who had used emotional support, medical support or other service animals on Allegiant flights, (thereby violating its own privacy policy), Allegiant intruded upon Plaintiff's, and all other Class Member's, privacy right to not have such matters known to others and the right of seclusion in such matters.

10.    Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the reckless actions of Allegiant in sending two group emails on November 8, 2018, announcing a new Emotional Support Service or Psychiatric Service Animal policy. The emails contained 400 email addresses with a majority of the

addresses including the name of the person involved.  For instance, your Plaintiff Debra

Douglas's email was in the 5 ½ pages of single-spaced names as:

debradouglas1@gmail.com.

11.    The email and a second one came from acaa@allegiantair.com to your

plaintiff.  On November 11, 2018, your plaintiff responded as follows at 5:37 p.m.

---

**Allegiant's NEW Emotional Support and Service Animal Policies**

Debra Douglas <debradouglas1@gmail.com>                          Sun, Nov 11, 2018 at 5:37 PM
To: acaa@allegiantair.com

Sir/Madam:

This email is very disturbing and an invasion of my privacy.  This action is one that
cannot be undone.

Do you have any idea how many hundreds of people that you have embarrassed and
upset by including email addresses of everyone that you were trying to reach
concerning an **Emotional Support, Service or Psychiatric Service Animal**?  Many
or most have a person's entire name within the email address.  Does your legal
department have any clue as to what the HIPAA law provides to patients relating to
their health records or information?  If not, PLEASE READ:

Definition of HIPAA - MedicineNet
https://www.medicinenet.com/script/main/art.asp?articlekey=31785   ▼

**HIPAA**: **Acronym** that **stands for** the Health Insurance Portability and Accountability
Act, a US law designed to provide privacy standards to protect patients' medical
records and other health information provided to health plans, doctors, hospitals and
other health care providers.

*Debra Douglas*

---

12.    The exposure of hundreds of email addresses of people who properly

submitted medical or psychiatric information to Allegiant  expecting confidentiality as

to that fact plus their email address constitutes an invasion of privacy and a breach of

contract with Allegiant.

13.    The sensitivity of email addresses is reflected in Document #17 filed on April 26, 2019.  There using just 12 email addresses and going to sites such as Google, Pipl, Facebook, LinkedIn, Twitter, My Life, useresearch.org and thatsthem.com, 11 out of the 12 email addresses that the paralegal reverse searched produced results, leading to information such as full names, addresses, phone numbers, birth dates, people related and/or connected to them, businesses linked to them, photos, activities they enjoy, education, other names and social media affiliations.  See Exhibit 1, the Affidavit of Jennifer Jameson.

14.    Thus whether an email address like ZorconS3@gmail.com (a fake email) is directly revealing as to who it is, it takes but a few clicks on a few sites to reveal not only the real name of the individual, but a lot of information concerning the person on a derivative basis working back from just an email given that each email address is unique.

15.    Two documents from Allegiant help guide this case.  The first is a privacy policy effective October 1, 2018 (Exhibit 2).  That policy is part of a two way transaction whereby customers use the internet to purchase tickets for flights and Allegiant in turn keeps what it describes as "personal information" private.

16.    Plaintiff and others in the class had a reasonable expectation of privacy based upon the representations of Allegiant in Exhibit 2 that the customer consents to Allegiant collecting what it concedes is <u>personal information</u> such as name, date of birth, "email address," "service animal needs," etc.  In return the data and what it calls

"personal information" collected online is used "to provide you with purchased services."

17.     Allegiant also pledges and agrees that:

1.     "Allegiant Air is concerned about your right to privacy;"

2.     "[Y]ou can be assured that *any information* you share with us will be treated confidentially;" and

3.     "E-mail addresses provided by you to Allegiant Air *shall not be shared* with any third parties that are not contractually obligated to a relationship with Allegiant Air or Allegiant Travel."

18.     One <u>database</u> Allegiant kept was the list of passengers who had support, comfort or service animals (overwhelmingly dogs) that they wanted with them in the cabin.

19.     Emotional Support Animals (ESA) are animals that provide therapeutic benefits <u>to</u> their owner through affection and companionship.  A Service Dog is specially trained to perform a task to help someone with a disability.  A seeing eye dog is one example of a Service Dog.  Unlike a Service Dog, an emotional support animal does not need specialized training to handle a task.  Further, Emotional Support Animals come in different breeds and animal types and are not just limited to dogs, while Service Animals are either dogs or mini horses.

20.     The Federal Aviation Administration requires that animals must be in a container:

Each air carrier may decide if they will allow passengers to travel with their pets in the passenger cabin.  If an airline does allow cabin pets, the

pet container is considered to be carry-on baggage and must conform to all carry-on baggage regulations.

- The pet container must be small enough to fit underneath the seat without blocking any person's path to the main isle of the airplane;

- In order for the airplane to leave the gate, the pet container must be stowed properly before the last passenger entry door to the airplane is closed;

- The pet container must remain properly stowed the entire time the airplane is moving on the airport surface, and for takeoff and landing; and

- Passengers must follow… instructions regarding the proper stowage of the pet container.

Fed. Aviation Admin., National Policy 8900.1 CHG 650, 3-3547 Carry-On Baggage.

21.    Allegiant's July 1, 2018, Contract of Carriage (Exhibit 3) provides that "passenger transportation" is "subject to the following terms and conditions" and that "the passenger agrees to be bound thereby."  Excerpts from preamble at Exhibit 3.

22.    Section 47 relates to animals all of which must be in a specified pet carrier that can "fit under a seat."  For $100 a passenger can bring in the cabin a dog or cat of the size to travel under a seat.  No animal will be checked for storage as baggage in the hold though some other airlines permit it.

23.    Section 48 of the contract explains that service animals can be <u>in</u> a seat <u>not</u> under a seat.  Section 48, ¶3.  Paragraph 6 outlines the requirements for comfort or emotional support animals:

6.  Emotional Support or Comfort Animals do not need to have specific training for that function.  Proper documentation (no older than one year from the date of the passenger's scheduled initial

7

flight) is required on letterhead from a mental health professional (e.g., a psychiatrist, psychologist, licensed clinical social worker, or other medical doctor specifically treating the passenger's mental or emotional disability) stating:

1.    That the passenger has a mental or emotional health-related disability recognized in the Diagnostic and Statistical Manual of Mental Disorders- Fourth Edition (DSM IV).

2.    That having the animal accompany the passenger is necessary to the passenger's mental health or treatment or to assist the passenger with his or her disability during the flight or at the passenger's destination.

3.    That the individual providing the assessment of the passenger is a licensed mental health professional and the passenger is under his or her professional care.

4.    The date and type of the mental health professional's license and the state or other jurisdiction in which it was issued….

24.    Because there are no markings on the bag or dog for support or comfort dogs anyone observing the bagged animal in the waiting area or other common areas would not know whether it is a paid animal, a free one (with a military ID), a search and rescue dog, or a comfort or support animal.  Only the airline knows.  Service dogs (which are usually larger) are on a leash, harness, etc. so identifying them but they need not be kept in a carrier.  There is no size limit for Service Dogs.

25.    Plaintiff determined that she could not meet the standards for filing her complaint under seal so she did not do so.  However, filing a lawsuit to vindicate her right to recover hardly constitutes a waiver of what Allegiant did in failing to protect what it termed as private "personal information" on her and 399 others.

8

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings all claims as class claims under Federal Rules of Civil Procedure, Rule 23(b)(1), (b)(2), (b)(3), and (c)(4).

        1.     **Class**:  Plaintiff brings her claim on behalf of:

> All natural persons whose email addresses were disclosed to each other in a two group emails from Allegiant dated November 8, 2018.

27.     Collectively, all these persons will be referred to as "Class Members." Plaintiff is a representative member of the Class.

28.     Plaintiff reserves the right to amend or modify the class definition after discovery is conducted.

### Certification of the Proposed Classes Is Appropriate

29.     Each member of the proposed Class meets the requirements of Fed. R, Civ. P. 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

30.     **Numerosity.**  400 names were included in the November 8, 2018, emails from Allegiant.  So far scores of putative class members from 15 different states have asked counsel to join this suit.  The joinder individually of all Class Members is impracticable due to the size. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Allegiant.

31.     **Commonality**.  There are well-defined, identical questions of law and fact affecting the Class. The questions of law and fact involving the class claims

predominate over questions that may affect individual Class Members. Those common

questions of law and fact include, but are not limited to, the following:

    a.    Whether Allegiant failed to adequately safeguard Plaintiff's and the Class's Personal Information;

    b.    Whether Allegiant failed to protect Plaintiff's and the Class's Personal Information, as promised;

    c.    Whether Defendant's computer systems and data security practices used to protect Plaintiff's and the Class's Personal Information violated federal, state and local laws, or Defendant's duties;

    d.    Whether Defendant acted negligently in failing to safeguard Plaintiff's and the Class's Personal Information;

    e.    Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct; and

    f.    What equitable relief is appropriate to redress Defendant's wrongful conduct.

32.    **Typicality.**  All Plaintiff's claims are typical of the claims of the Class.

33.    **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the

Class. Plaintiff has no interests that are adverse to, or in conflict with, the Class

Members. There are no claims or defenses that are unique to Plaintiff.   Plaintiff is an

experienced business woman, a former Merrill Lynch financial adviser, a former

Chairman of the Investment Committee of the $5 billion N.H. Retirement System, and

for ten years has been paid by the state of New Hampshire serving as Chairman of the

$300,000,000 plus N.H. Lottery Commission. She is able to make independent judgment

calls and is not a wife sub-servient to her husband as are wives in Saudi Arabia.

Likewise, Plaintiff has retained counsel experienced in class action and complex litigation that has sufficient resources to prosecute this action vigorously.

34.    **Superiority**.  A class action is the superior method for the fair and efficient adjudication of this controversy.  The interests of Class Members in individually controlling an individual action are small.

35.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

36.    **Injunctive and /or Declaratory Relief**:  In addition, Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the class under Federal Rule of Civil Procedure 23(b)(2). Defendant continues to (1) maintain the private information of Class Members but (2) failed to adequately protect their private information.

## CAUSES OF ACTION

### COUNT I
### INVASION OF PRIVACY
### INTRUSION UPON SECLUSION

37.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

38.    Intrusion upon another's seclusion occurs when intrusive conduct gives "beyond the limits of decency" in that the intruder "unreasonably and seriously interferes with another's interest in not having his affairs known to others," where the intruder "should have realized that it would be offensive to persons of ordinary sensibilities."  Bobbett v. Portsmouth, 2018 WL 1542325, at *4 (quoting Hamberger, 106

N.H. at 110-11, and no "harm beyond the intrusion itself" need be proven as the intrusion, alone, is sufficient "to recover damages for the deprivation of his seclusion." Preferred Nat. Ins. Co. v. Docusourse, Inc., 149 N.H. 759, 766-67 (2003)).

39.    Whether the intrusion is offensive is a factfinder's determination evaluated in light of "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Bobbett, 2018 WL 1542325, at *5 (quoting Remsburg v. Docusearch, Inc., 149 N.H. 148, 156 (2003).

40.    Defendant's conduct transcended "the limits of decency" not once, but twice, when Defendant "unreasonably and seriously interfere[d] with another's interest in not having his [or her] affairs known to others" when Defendant sent two emails on November 8, 2018, which publicly disclosed the email addresses of 400 individuals it required and who had used emotional support, medical support or service animals on Allegiant flights, and thereby, in effect, also disclosed that those individuals had approved psychological or medical reasons that placed them in the unique database of 400 medically-related passengers.

41.    Defendant invaded "something secret, secluded or private" pertaining to Plaintiff and Class Members because, while the fact that a passenger is accompanied by an emotional support animal on flights or in other public places is not readily observable by the public, because no special marking is required for such dogs, unlike service dogs.  The public's mere observation of a passenger with an animal under the

seat in a small container reveals *nothing* about that passengers' private life or medical or

psychological condition because pets for whom payment is made must likewise be in a

dog bag or container small enough to fit under a seat.  Rather, the private matter

pertaining to Plaintiff (and Class Members) became known only when Defendant made

its public disclosures to 400 people.

42.    Defendant should have realized that information related to medical status

and health conditions is such a disclosure that "would be offensive to persons of

ordinary sensibilities," especially in light of the public's general expectation that such

information will remain private, the myriad laws which safeguard that expectation, and

Allegiant's concession that an email address is "personal information" it must keep

private along with the medical information tied to it.

43.    In fact, Defendant *did* realize that such a disclosure" would be offensive to

persons of ordinary sensibilities" as demonstrated by:

> a.    Defendant sending out a *second* email – albeit one which only
>
>        added to the harm by publicly disclosing private facts for a *second*
>
>        time – which stated that it "would like to recall" the first email; and
>
> b.    The assurances Defendant made to Plaintiff and Class Members in
>
>        its privacy policy, including that "Allegiant Air is concerned about
>
>        your right to privacy," "[Y]ou can be assured that *any information*
>
>        you share with us will be treated confidentially," and "E-mail
>
>        addresses provided by you to Allegiant Air *shall not be shared* with

any third parties that are not contractually obligated to a relationship with Allegiant Air or Allegiant Travel."

44.    On information and belief, Allegiant has failed to notify the appropriate state regulators of its breach of data privacy under the respective data privacy acts of the states in which the 400 customers reside.

45.    Allegiant was in no way active in responding to its data breach until Plaintiff complained and then Allegiant four days later regretted its error in an email sent to the 400 people involved.  See Exhibit 4.

46.    In light of the following factors, a jury could find that Defendant's intrusion was objectively offensive:

a.    The degree of the intrusion was severe and widespread as Defendant's intrusion was spread to 400 individuals, making the intrusion objectively offensive;

b.    Through Defendant's conduct, Defendant intruded upon Plaintiff and Class Members' privacy not once, but twice, making the intrusion objectively offensive;

c.    The setting into which Defendant intruded – private information revealing that individuals have approved psychological or medical reasons for use of a service or emotional support animal – was a setting which reasonable people of ordinary sensibilities would consider private, making the intrusion objectively offensive; and

     d.     The expectation of those who had their privacy trampled were based not only upon the general societal expectation that medical information is private, but also were based upon the aforementioned assurances made by Defendant's privacy policy, making the intrusion objectively offensive.

47.     Because the intrusion itself is sufficient to state a claim for invasion of privacy the Plaintiff and Class Members have a viable claim for that tort.  No "harm beside the intrusion itself" need be proven for damages to be awarded so Plaintiff and the Class so request such an award.

**COUNT II**
**INVASION OF PRIVACY**
**PUBLIC DISCLOSURE OF PRIVATE FACTS**

48.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

49.     The disclosure to 400 people of email addresses of individuals with medical, emotional, psychiatric, or psychological needs for a support animal constitutes publication of private facts constituting the tort of invasion of privacy.  The emails were all linked to a database kept by Allegiant <u>not</u> of ordinary passengers but, rather, those 400 passengers who had taken the time to secure medical or psychiatric provider documents attesting to their need to have Allegiant accommodate a condition or disability not self-evident, like the need for a wheelchair.

50.     Once Allegiant chose to ask for such sensitive medical or psychological information it assumed a duty to keep it, and the email addresses connected to it, confidential and private - as it said it would do.

15

51.     Instead, it shared the entire database with everyone in it and, twice having done so, could not control what each and every one of those 400 people might choose to do with it, nor has Allegiant taken any steps to determine if any member of the database has sold or used it in a secondary or derivative fashion.

52.     Given a wide range of psychiatric disorders one cannot presume all 400 recipients have been purely benign in their use or nonuse of the information Allegiant gave them.

53.     Information related to medical status and health condition is "of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Bobbett v. Portsmouth, 2018 WL 1542325, at *5.  Because of the inherent sensitive nature of health and medical information, and because the public has no concern or interest in that information, reasonable people have a general expectation that their health and medical information is private.

54.     The tort of public disclosure of private facts is accepted nationwide as well as having long been the law in New Hampshire.  Hamberger v. Eastman, 106 N.H. 107 (1965).

55.     As a result of Defendant's invasion of privacy Plaintiff and Class Members have suffered harm for which they must be compensated by damages.

## COUNT III
## BREACH OF CONTRACT

56.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

57.     Allegiant's Contract of Carriage in Section 48 (Ex. 3) recognizes that emotional support or comfort animals may accompany a passenger as long as proper paperwork has been secured from medical and mental health professionals and in turn provided to Allegiant.

58.     That documentation from a psychiatrist, psychologist, licensed clinical social worker, or a physician is required by Allegiant and makes the paperwork sent to Allegiant part of the customer's private health or mental health record, the mere existence of which is not supposed to be shared nationwide with hundreds of fellow customers, let alone sharing email addresses of persons with sensitive issues related to panic attacks, anxiety, PTSD, etc.

59.     Defendant's Contract of Carriage permits passengers to travel with a service or support animal if need be.  To do so, Provision 48(6) of the contract states that passengers may be required to give Allegiant "written documentation."  See Exhibit 3. In order to use an emotional support animal on Defendant's flights, Provision 48(6)1. states that "documentation" from a mental health professional is required and must state, in part, "that the passenger has a mental or emotional health-related disability recognized in the Diagnostic and Statistical Manual of Mental Disorders." Id.

60.     Pursuant to Defendant's Contract of Carriage, Allegiant requires passengers traveling with emotional support animals to submit documents which require the passenger's email address to be included.

61.     A plain reading of Defendant's Contract of Carriage informs that these required documents are included in the term "information" as used in Defendant's

privacy policy stating that passengers "can be assured that any information you share with us will be treated confidentially."  See Exhibit 2.

62.    Plaintiff and Class Members entered into the contract with reasonable reliance on their personal information being secured.

63.    If various documents form the contract, "the intent of the parties must be determined from all documents read together and not isolated." Bellak v. Franconia College, 118 N.H. 313 (1978).

64.    Because Defendant's conduct has failed to meet the assurance *it* made to Plaintiff and Class Members, and because those assurances were with regard to the substance of the Contract and privacy policy promises, Defendant's conduct amounted to a breach of that contract, for which damages are sought.

## COUNT IV
## NEGLIGENCE

65.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

66.    Allegiant owed a duty to Plaintiff and Class Members, arising from the sensitivity of what it called their Personal Information, to exercise reasonable care in safeguarding email addresses as part of the contract it made with those customers using the internet to purchase tickets.

67.    Reasonable and prudent businesses that obtain sensitive and private information of their contracting customers should implement data systems and other internal safeguards for the maintenance and use of that information in compliance with

best practices under industry standards.[1]  Based upon Defendant's not one, but two separate disclosures of sensitive information belonging to Plaintiff, it is apparent that Defendant failed to do so.

68.    Instead, Allegiant was negligent in its maintenance, control, and use of Plaintiff's sensitive information.  That negligence resulted in Defendant publicly exposing 400 email addresses in an email which, in effect, also disclosed that each recipient suffers with some disability, health condition and/or mental health condition or illness.

69.    Even worse, the information in question was provided by Plaintiff pursuant to negligent misrepresentations and false assurances made by Defendant as follows:

    a.    "Allegiant Air is concerned about  your right to privacy."

    b.    "[Y]ou can be assured that *any information* you share with us will be treated confidentially;" and

    c.    "E-mail addresses provided by you to Allegiant Air *shall not be shared* with any third parties that are not contractually obligated to a relationship with Allegiant Air or Allegiant Travel."

See Exhibit 2.

---

[1] The present proceedings are at too early a stage to determine precisely what actions would constitute compliance with best practices under industry standards.  That determination is a matter best left for discovery at a later date.

70.     Those assurances were evidence of Defendant's awareness that it owed duties to Plaintiff and the Class, the very duties to which Defendant twice breached on November 8, 2018.

71.     That duty to protect email addresses arose out of a contractual relationship and a "duty of care can arise out of a contract." Mbahaba v. Morgan, 163 N.H. 561, 567 (2012).

72.     The economic loss doctrine does not apply here because there is no economic or commercial loss but one purely to be measured by tort damages as a non-economic loss. "Thus, where a plaintiff may recover economic loss under a contract, generally a cause of action in tort for purely economic loss will not lie." Plourde Sand & Gravel Co. v. JGI Eastern, Inc., 154 N.H. 791, 794 (2011).

73.     Here there is no economic loss to the Plaintiff or the Class and thus the failure of Allegiant to properly safeguard each customer's personal information, as it promised to do, was a breach of its duty for which it should compensate the Plaintiff and Class given the sensitive nature of the database arising out of physician, psychologist, etc. letters that Allegiant required to be submitted to comply with its requirements under the Contract of Carriage and Privacy Policy.

74.     The damages to Plaintiff and the Class Members were a proximate, reasonably foreseeable result of Allegiant's breaches of its duties.

75.     Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and Class Members the following relief against Defendant:

A.    An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

B.    Injunctive relief requiring Defendant to (1) strengthen their data security systems that maintain private information to comply with best practices under industry standards;

C.    An order requiring Defendants to pay all costs associated with Class notice and administration of Class-wide relief;

D.    An award to Plaintiff and all Class Members of compensatory and consequential damages in an amount to be determined at trial;

E.    An award of attorneys' fees, costs, and expenses, as provided by law or equity;

F.    An order requiring Defendant to pay pre-judgment and post-judgment interest, as provided by law or equity; and

G.    Such other or further relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Respectfully submitted,
DEBRA M. DOUGLAS, et al.
By their attorneys,
DOUGLAS, LEONARD & GARVEY, P.C.,


Date: July 22, 2019            By:    /s/Charles G. Douglas, III
                                      Charles G. Douglas, III (NH Bar #669)
                                      14 South Street, Suite 5
                                      Concord, NH 03301
                                      (603) 224-1988
                                      chuck@nhlawoffice.com


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been sent electronically to all counsel of record.


                                      /s/Charles G. Douglas, III
                                      Charles G. Douglas, III